**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GINA BRUMLEY, *as Administrator of the Estate of Terry Lynn Brumley, Jr., and on behalf of all wrongful death heirs*,<br><br>Plaintiff,<br><br>v.<br><br>WESTMORELAND COUNTY;<br>BRYAN L. KLINE, *in his official and individual capacity*;<br>DEPUTY WARDEN STEVEN PELESKY, *in his official and individual capacity*;<br>PRIMECARE MEDICAL INC;<br>JOHN AND JANE DORE CORRECTIONS OFFICERS 1-10, *in their individual capacity*; *and*<br>JOHN AND JANE DOE MEDICAL AGENTS 1-5, *in their individual capacities*,<br><br>Defendants. | Civil Action No. 2:25 CV 1485<br><br>District Judge W. Scott Hardy<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 28 |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

Plaintiff, Gina Rae Brumley ("Plaintiff") brings this action as the Administrator of the Estate of Terry Lynn Brumley, Jr. ("Brumley") and Brumley's mother. ECF No. 1 ¶¶ 7, 11. Brumley died from a drug overdose while incarcerated at the Westmoreland County Prison ("WCP") in 2023. Invoking 42 U.S.C. § 1983, Plaintiff sues Defendants Westmoreland County, WCP Warden Bryan L. Kline ("Kline"), WCP Deputy Warden Steven Pelesky ("Pelesky"), (collectively, "Westmoreland Defendants"), prison services contractor PrimeCare Medical, Inc. ("PrimeCare"), as well as John and Jane Doe Corrections Officers and John and Jane Doe medical agents of PrimeCare. She alleges violations of the Eighth Amendment against the

Westmoreland Defendants and the Corrections Officers, state law claims of corporate liability against PrimeCare, and negligence against PrimeCare and its unnamed medical agents.

Presently pending is the Westmoreland Defendants' Motion to Dismiss for Failure to State a Claim. ECF No. 28. For the following reasons, it is respectfully recommended that the Court grant the motion.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the Administrator of the Estate of Terry Lynn Brumley and Brumley's mother. ECF No. 1 ¶¶ 7, 11. Defendant PrimeCare is a Pennsylvania corporation located in Harrisburg, Pennsylvania, which provides health care services to prisons and contracted with Westmoreland County to provide health care services to WCP. Id. ¶¶ 20-23. Westmoreland County is a municipal governmental entity organized under the laws of the Commonwealth of Pennsylvania, and which operates the WCP, and is a "person" under 42 U.S.C. § 1983. Id. ¶¶ 13-14. Kline became Warden of WCP in February 2021. Id. ¶ 17. Pelesky was the Deputy Warden of Security at WCP at the time of Brumley's incarceration. Id. ¶ 18. Fictitiously named and unserved Defendants John and Jane Doe Corrections Officers ("COs") 1-10 are current or former employees of WCP. Id. ¶ 19. Fictitiously named and unserved Defendants John and Jane Doe Medical Agents ("MAs") 1-5 are current or former employees of PrimeCare. Id. ¶ 24.

Brumley was incarcerated at WCP from January 4, 2023, through the date of his death, September 28, 2023.[1] Id. ¶ 28. Plaintiff claims that Brumley was suffering from "drug withdrawal, anxiety, and/or exhibiting symptoms of depression." Id. ¶ 73. Plaintiff further claims that despite WCP's records that documented Brumley's serious substance use disorder and other

---

[1] Brumley was a convicted prisoner, ECF No. 1 ¶ 131, and therefore the Eighth Amendment applies here, rather than the 14th Amendment, which applies to pre-trial detainees. City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983).

medical conditions, the Westmoreland Defendants, and presumably the John and Jane Doe COs, did not adequately monitor him and "someone within the facility was able to distribute illicit drugs to [Brumley], which he ingested." Id. ¶¶ 74, 75.

On September 28, 2023, Brumley was discovered unresponsive in his cell, never regained consciousness, and was later pronounced dead. Id. ¶¶ 29, 86. Three other inmates required hospitalization for drug overdoses on the same day. Id. ¶ 30. At some point after Brumley was discovered unresponsive, Narcan was administered to Brumley. Id. ¶ 100. The Westmoreland County Coroner, Sean R. Hribal, determined that Brumley died of an accidental drug overdose due to "acute drug intoxication." Id. ¶ 31. Autopsy and Toxicology Reports indicated that Brumley's post-mortem blood sample contained fentanyl, a controlled substance, in the concentration of 17ng/mL. Id. ¶¶ 32-33. Brumley was not prescribed fentanyl. Id. ¶ 33.

According to reporting dated August 31, 2015, an average of 94 inmates addicted to drugs or alcohol were committed to WCP every month. Id. ¶ 35. In 2014, that number was reported to have increased to 117, and in 2015, it rose to 147. Id. ¶ 36. In 2016, more than seventy percent (70%) of incoming inmates at WCP required treatment for drug or alcohol abuse. In February 2019, "152 of 187 inmates admitted to WCP needed detox treatment." Id. ¶ 39, n. 3.

WCP has a longstanding history of housing a high percentage of inmates with substance abuse issues, with reports showing that between 70% and 80% of incoming inmates required treatment for drug or alcohol addiction. Id. ¶¶ 37-40, 65-66. Despite this, the prison was severely understaffed, operating with only 128 of 159 authorized positions filled, which impaired its ability to properly screen incoming inmates, monitor the housing cell blocks, and protect vulnerable inmates effectively. Id. ¶ 71. Plaintiff alleges that the Westmoreland Defendants

failed to train and supervise the Corrections Officers to ensure they were following the procedure for intake, search, pat down, and body scanning of incoming inmates and failed to properly train and supervise the Corrections Officers how to properly screen inmates before they were admitted to the prison population to ensure they were not bringing drugs into the facility. Id. ¶¶ 46-47.

Westmoreland County, Kline and Pelesky maintained policies and procedures for the intake and search of incoming inmates at WCP, including pat downs and body scanning. Id. ¶ 44. Intake procedure also included questioning and determining whether incoming detainees used consumed drugs and alcohol. Id. ¶ 45. In addition, WCP maintained policies requiring inmates to relinquish shoes and barring inmates from receiving original outside mail (being provided with copies instead) to prevent drug smuggling by means of drugs sprayed on shoes and paper. Id. ¶ 39, n. 3, attached as Exhibit "A" to Defendants' Motion to Dismiss. WCP also used drug sniffing dogs to conduct cell-to-cell searches. Id. At the time of Brumley's admission into WCP, the Westmoreland Defendants had actual and constructive knowledge of the longstanding and ongoing drug epidemic at the WCP. Id. ¶ 64. WCP further maintained policies and procedures to conduct security checks, which should be performed at routine intervals. Id. ¶ 81.

Death from opioid overdose usually occurs within 1 to 3 hours after ingestion. Id. ¶ 84. Narcan is a medication that acts as an antidote to an opioid overdose. Id. ¶ 99. Plaintiff alleges that had proper safety checks been performed, Brumley's condition should have been observed and acted upon within that one-hour window. Id. ¶ 80. Had Narcan been administered in a timely fashion, Brumley's overdose could have been reversed. Due to Brumley's overdose going undetected for an unreasonable amount of time, the delayed response resulted in his death. Id. ¶ 101. Defendants Kline, Pelesky, John and Jane Doe COs also deprived Brumley of his last chance at survival by failing to promulgate and/or implement appropriate policies governing how

WP staff should respond to an overdose and by failing to train and supervise WPC staff on how to do so. Id. ¶ 103.

On September 25, 2025, Plaintiff initiated this counseled federal action. ECF No. 1. On December 2, 2025, PrimeCare filed its Answer. ECF No. 27. Unnamed John and Jane Doe COs, sued in their individual capacities, have not been served, nor have unnamed John and Jane Doe MAs, sued in their individual capacities been served. See Docket.

On December 8, 2025, the Westmoreland Defendants filed the instant Motion to Dismiss with Brief in Support, with attached Exhibits.[2] ECF Nos. 28, 29.

On December 31, 2025, Plaintiff filed her Brief in Opposition. ECF No. 31. On January 7, 2026, the Westmoreland Defendants filed their Reply Brief. ECF No. 32.

The Motion to Dismiss is now ripe for consideration.

## B. STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic

---

[2] The exhibits are newspaper articles reporting on WPC's policies and procedures for the intake and search of incoming inmates, cell-to-cell searches, and the Westmoreland County investigation and subsequent 2020 arrests of individuals who sent drugs to inmates. ECF Nos. 29-1 through 29-4. The Westmoreland Defendants represent that the articles are attached to clarify the allegations in the complaint; Plaintiff cites to the same articles but does not attach them to the Complaint. ECF No. 29 at 4, citing ECF Nos. 1 ¶ 39, n. 3; ¶ 44, n. 4; ¶ 54; ¶ 52, n. 5; and ¶ 53, n. 6. Thus, they are not intended to, nor does the Court find there is a reason to, convert the motion to dismiss into a motion for summary judgment.

Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## C. DISCUSSION

Plaintiff asserts six claims, four of which are asserted against the Westmoreland Defendants. The Westmoreland Defendants move to dismiss all four claims pursuant to Fed. R. Civ. P. 12(b)(6).

### 1. Count I: Eighth Amendment Failure to Protect Pursuant to § 1983 against Westmoreland County, Kline, Pelesky, and John/Jane Doe Corrections Officers

Plaintiff asserts that the Westmoreland Defendants are liable under §1983 for violating Brumley's Eighth Amendment rights by failing to protect him from accessing the dangerous drugs that took his life. The Eighth Amendment prohibits prison officials from "inflict[ing]" "cruel and unusual punishments." U.S. Const. amend. VIII; see Estelle v. Gamble, 429 U.S. 97, 104 (1976). Section 1983 enables plaintiffs to bring civil actions against any person who, acting

under the color of state law, deprives another of rights, privileges, or immunities secured by the Constitution and/or laws of the United States. 42 U.S.C. § 1983.

A plaintiff seeking to raise a failure to protect claim must allege facts showing that he "was incarcerated under conditions posing a substantial risk of serious harm, [that the defendant] was deliberately indifferent to that substantial risk to his health and safety, and . . . the [defendant's] deliberate indifference caused him harm." See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012), abrogated in part on other grounds as recognized in Mack v. Yost, 968 F.3d 311, 319 n.7 (3d Cir. 2020); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994).

A viable claim has both an objective and a subjective prong, requiring the plaintiff to demonstrate that (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety. Farmer, 511 U.S. at 833. Here, while the averments of Plaintiff's Complaint are detailed, they fall short in alleging sufficient factual allegations to assert a viable failure to protect claim under both required prongs.

**a. Objective Element**

The objective element requires that Plaintiff show Brumley faced an objectively excessive risk of harm. Id. at 837. A court must assess "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." Helling v. McKinney, 509 U.S. 25, 36 (1993) (emphasis in original). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." Id.; see also Farmer, 511 U.S. at 834 (explaining "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

In Zakora v. Chrisman, 44 F.4th 452 (6th Cir. 2022). Zakora died from an overdose of fentanyl in his prison cell and his mother, as the personal representative of his estate, brought a claim for failure to protect under the Eighth Amendment against prison officials. Described, at the time, as "one of the few cases to have directly considered the viability of a failure-to-protect claim following a prisoner drug overdose," Corbin v. Bucks Cnty., 703 F. Supp. 3d 527, 535 (E.D. Pa. 2023),[3] the Sixth Circuit held that "[f]entanyl unquestionably poses a severe danger to anyone who comes in contact with it," a danger which is "magnified when introduced to a controlled environment like a prison." Zakora, 44 F.4th at 470. Mirroring the language of Helling, it follows that "the risk of injury from unfettered access to deadly drugs inside a prison is not one that today's society chooses to tolerate." Id. "[S]imple exposure to drugs," however, does not satisfy the objective element of the analysis. Id. at 472. A court must consider the risk to the injured *party before the injury occurred*, because "[a] pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985) (citation omitted) (emphasis added).

At the time of Zakora's death, illegal drugs were smuggled into the prison in basketballs that were thrown over the facility's fence, and the scheme was brought to the attention of prison officials, who failed to act on that knowledge, to the detriment of inmates. Zakora, 44 F.4th at 461. The Sixth Circuit held that the estate had plausibly alleged an objectively serious risk of harm based on Zakora's "unfettered access to deadly drugs inside the prison." Id. at 470-71. Three alleged facts drove that conclusion. First, the complaint contained detailed allegations about the "widespread presence of drugs" at Zakora's facility. Id. at 470. Second, in the two days

---

[3] Although Plaintiff here argues that Zakora is not binding on this Court, as our analysis will show, it is regarded as a persuasive case with respect to the objective prong in drug overdose cases where an Eighth Amendment violation is alleged. "While the Sixth Circuit's holding in Zakora is not binding in this litigation, its reasoning is persuasive." Corbin v. Bucks Cnty., 703 F. Supp. 3d 527, 535 (E.D. Pa. 2023).

before Zakora's overdose, two other inmates in his twelve-to-sixteen-inmate unit had also overdosed. Id. at 461, 471. Third, prison officials failed to investigate those overdoses. Id. at 461–62, 472. These combined alleged facts "evidenced" a sufficiently serious risk to satisfy the objective prong of an Eighth Amendment claim. Id. at 472.[4]

In contrast, the Sixth Circuit in Caraway v. CoreCivic of Tenn., LLC, 98 F.4th 679 (6th Cir. 2024), decided two years after Zakora, in addressing the objective prong, affirmed the district court's dismissal of a complaint for failure to state a claim, wherein a deceased prisoner's estate sued prison officials for violations of the Eighth Amendment by failing to prevent his overdose from fentanyl. The complaint in that case failed to sufficiently allege the first Zakora factor, *i.e.* that Caraway faced an excessive risk of harm from "unfettered access to deadly drugs." present in Zakora. Plaintiff broadly alleged that "all CoreCivic's private prisons" had seen "a marked increase in drug overdose deaths" and that "all CoreCivic's" facilities had seen "a dramatic increase in inmate drug use and drug overdoses." Id. at 684.

> Indeed, the estate provides no detail about the magnitude of the overdose problem it alleges. [The correctional facility] houses roughly 1,500 inmates. Framed at the estate's level of generality, we can only speculate as to how many overdoses among those inmates a "marked" and "dramatic" increase represents. Absent more detailed allegations, we can't reasonably infer an overdose problem as acute as the one in Zakora.

Id. at 684-85. The Caraway Court noted, "the mere allegation that inmates have overdosed—even at an increased rate—doesn't come close to showing the kind of excessive, one-for-every-eight risk Zakora faced." Id. The generalized allegations about the defendants' failure to respond

---

[4] However, the Zakora court held that the allegations in the complaint were sufficient to establish the objective and subjective prongs of the failure-to-protect claim against MDOC Defendants who knew about the drug smuggling ring, who the suppliers were, and failed to act, which when combined with two prior drug overdoses allowed the court to draw a reasonable inference that they knew there was a substantial risk of harm to Zakora. 44 F.4th at 473. However, Plaintiff had not sufficiently alleged the subjective prong against the state corrections director because the estate "generally" alleged that the state corrections director "had notice" of a drug problem based on reports of smuggling from other facilities. Id. But that was not enough to support the conclusion that the director subjectively knew Zakora faced an excessive risk of harm. Id.

to the alleged drug problem were "a far cry from Zakora's specific, close-in-time failure." Id. "What set Zakora's case apart was the environment presenting 'unfettered access' to deadly narcotics." Id., citing Zakora, 44 F.4th at 472. Addressing the allegations of failure to investigate, the court noted that the complaint contained only generalized allegations that the institution's understaffing "led to rampant drug use, "apparently in part because officials couldn't perform adequate head counts and inspections. That kind of conclusory statement, unaccompanied by factual support, receives no presumption of truth." Id. at 686, citing Iqbal, 556 U.S. at 678. In Caraway, unlike Zakora, there were no immediate prior overdoses and prison officials couldn't have failed to investigate them; "those allegations are a far cry from Zakora's specific, close-in-time failure." Id. Thus, just as "Zakora's death from a drug overdose" didn't "independently establish the objective prong," neither does Caraway's. Serious physical harm—even death—does not *ipso facto* satisfy a failure-to-protect claim's objective component." Id. at 685. The court held that the decedent's estate failed to adequately plead an objectively serious risk of harm which was "enough to sink its Eighth-Amendment claim." Id. at 686.[5]

In a similar vein, courts within the Third Circuit have recognized the importance of Zakora and Caraway. In Young v. Monmouth Cnty., CV 24-4975, 2025 WL 354447 (D.N.J. Jan. 31, 2025), the district court recognized that "the threat of unfettered access to drugs in a controlled environment of incarceration may give rise to a failure to protect claim under certain circumstances." Id. at *1 (citing Caraway, 98 F.4th at 684). However, "simple exposure to drugs while incarcerated, or a 'run-of-the-mill drug-overdose case' will not be sufficient to support a failure to protect claim in the absence of detailed facts showing that the defendants knew of serious and widespread access to illegal drugs and knew that those drugs were actively being

[5] Nevertheless, the Sixth Circuit continued its analysis and addressed the subjective component. Caraway, 98 F.4th at 686.

abused, such as in a case where numerous inmates suffer overdoses in a relatively short time frame." Id. In Young, the district court dismissed the failure to protect claims against the corrections officers brought by the estate of an inmate who died of a drug overdose while incarcerated. The district court held Plaintiff failed to plead facts, as opposed to conclusory allegations, to support the idea of rampant drug use and abuse in the jail. Plaintiff had alleged there were two overdoses nearly ten years before the inmate's death, another overdose which occurred months after his overdose, and that at least two staff members had been arrested and prosecuted for smuggling illicit substances completely different from those involved in decedent's case well over a year before his overdose. Id. at *5.

Two months after Young, another district court in the District of New Jersey addressed the sufficiency of the complaint in Trussell v. Monmouth Cnty., wherein the administrator of an estate sued county officials, corrections officers, the warden, health system employees who worked at the prison, and other state actors after a pretrial detainee died of a drug overdose (fentanyl and morphine) three days after her arrest while in custody at the Monmouth County Correctional Institution ("MCCI"). C.A. No. 24-00151, 2025 WL 914923, at *1-2 (D.N.J. Mar. 26, 2025). Among her multiple claims were a failure to protect under the due process clause of the Fourteenth Amendment, which, like the failure to protect claim under the Eighth Amendment, includes an objective prong. The defendants moved to dismiss the estate's complaint under Rule 12(b)(6). After ordering supplemental briefing addressing the recent decision in Young, the district court applied the Zakora/Caraway framework, i.e., that in a failure to protect claim, the objective prong requires Plaintiff to allege facts showing 1) widespread presence of drugs, 2) that numerous inmates suffered overdoses in a relatively short time frame, and 3) there was a failure to investigate or otherwise adequately respond to the drug problem. Id.

at *9. The district court held that Plaintiff had adequately alleged the objective prong of a failure to protect claim under the Eighth Amendment against the County.[6] Id. at *14. In Young, Plaintiff cited newspaper articles and research studies in support of her claim, and further, she alleged that she: was arrested for failing to appear on scheduled dates in Drug Court, had a history of using drugs and suffered from a substance use disorder, had needle marks on her right arm, was placed on a withdrawal protocol and prescribed detox medication, and further, there were allegations that seventeen MCCI detainees had suffered from opioid overdoses in 2022-2023 (eleven in 2022 and six in 2023), with three of these seventeen overdoses resulting in detainees' deaths. Id. at *4, *12. As for the unfettered access to drugs in MCCI, according to her complaint, drugs were brought into the MCCI in several ways—by MCCI corrections officers and other facility staff, detainees who were not adequately searched upon admission, and through the mail. Specifically, "envelopes soaked in drugs addressed to detainees were permitted to enter the facility and were then smoked by detainees," and "[d]etainees also arranged to have co-conspirators send contraband to them using what appeared to be a letter from an attorney," which allowed detainees to open the envelopes outside the presence of corrections officers. Id. at *10. In addition, detainees sold prescribed medications to other inmates, that the prison personnel and detainees ran two drug conspiracies in the facility including smuggling of opioids and distribution of fentanyl-laced heroin which resulted in another inmate's fatal overdose. Id. The Court also noted that the allegations regarding the pattern of drug overdoses and deaths in 2022-2023 plausibly indicates that officials failed to respond to the ongoing drug problem; after two smuggling rings were prosecuted, seventeen drug overdoses occurred in a two-year timeframe.

---

[6] The Fourteenth Amendment's Due Process Clause affords pre-trial detainees protections that are 'at least as great as the Eighth Amendment protections available to convicted prisoners.'" Corbin, 2024 WL 2980218, at *2 n.2).

Id. at *14. As for failure to investigate, the complaint stated that, "when [a pretrial detainee who suffered an overdose in the MCCI in 2022 returned to the facility from the hospital], no MCCI official questioned the detainee about the source of the drugs that nearly killed him." Id.

> In sum, because Plaintiff alleges sufficient facts to establish the existence of the three "facts" together with the dangers of fentanyl in a correctional setting, the Court concludes that, "at this stage of litigation, [Plaintiff] plausibly describe[s] the kind of 'unfettered access to drugs in a prison that the Zakora court determined was sufficiently serious to satisfy the objective prong of an Eighth Amendment claim.'" Corbin, 703 F. Supp. 3d at 536 (quoting Zakora, 44 F.4th at 472).

Id. at *14. The district court continued to hold that the complaint pled sufficient facts to state a plausible Monell failure-to-protect claim against Monmouth County, but failed to allege sufficient facts to raise a reasonable inference that the non-policymaking Corrections Officer Defendants were deliberately indifferent to a serious risk of injury.

Here, the allegations in this Complaint do not indicate a widespread presence of deadly drugs at WCP resulting in overdose deaths that went uninvestigated prior to Brumley's overdose. Corbin, 2024 WL 2980210, at *8. Although deadly drugs were somehow smuggled into WCP shortly before Brumley's death, which he unfortunately accessed, there is no allegation to support a claim that there was an ongoing drug smuggling problem in 2023, causing overdose deaths that was being ignored by prison officials. His reliance on newspaper articles misses the mark. The Young court found that "[the p]laintiffs' allegations and the articles in question do not show widespread overdoses, nor do they support [the] [p]laintiffs' conclusory allegations that drug abuse and distribution was rampant in the county jail." 2025 WL 354447, at *4. "The only actual incidents of drug abuse mentioned in either article occurred in either 2013, nearly a decade before [the detainee's] incident, an overdose months after the decedent's death, and the arrest

and prosecution of staff members over a year prior to decedent's overdose involving a different illegal substance. Id. at *13.

In the instant Complaint, Plaintiff alleges that between 2014 and 2019, a high number of inmates addicted to drugs or alcohol were committed to WPC, required treatment for drug and alcohol abuse or needed detox treatment. ECF No. 1 ¶¶ 35 - 39. In addition, Plaintiff alleges drug smuggling scheme involving inmates and their associates occurred in 2019 through 2020, which was discovered, investigated and the individuals were prosecuted. Id. ¶¶ 44, 52, 53, 54. This involved detainees ingesting synthetic marijuana —not fentanyl—which had been soaked into papers and fake legal mail brought into WCP by family or acquaintances and then transferred among detainees. Id. Plaintiff does not allege that this scheme involved or impacted Brumley, nor could it because he was not incarcerated at WCP until January 4, 2023. Plaintiff does not allege that any drug overdoses occurred at WCP until Brumley's overdose death some three years later on September 28, 2023 (and the overdoses of several others who obtained drugs at the same time). There are no allegations of any other smuggling attempts or awareness of these attempts by prison officials or employees between 2020 and September 2023. Plaintiff summarily alleges that at the time of Brumley's admission into WCP, the Westmoreland Defendants had "actual and constructive knowledge" of the longstanding and ongoing drug "epidemic" at the WCP, id. ¶ 64, but does not support this allegation with specific facts which would place the any drug smuggling within the timeframe of Brumley's incarceration in 2023.

Plaintiff claims that Brumley was suffering from "drug withdrawal, anxiety, and/or exhibiting symptoms of depression." Id. ¶ 73. Plaintiff further claims that despite WCP's records that documented Brumley's serious substance use disorder and other medical conditions, the Corrections Defendants did not adequately monitor him and "someone within the facility was

able to distribute illicit drugs to [Brumley], which he ingested." Id. ¶¶ 74, 75. This hardly supports the requirement that Plaintiff show that the Westmoreland defendants were on notice of an "unfettered access to deadly drugs" at the WCP sufficient to support the allegation they were deliberately indifferent to the risk.

Plaintiff alleges that Brumley was exposed to an excessive risk of serious harm because the prison was severely understaffed, operating with only 128 of 159 authorized positions filled, which impaired its ability to properly screen incoming inmates, monitor the housing cell blocks, and protect vulnerable inmates effectively. Id. ¶ 71. At the same time, Plaintiff alleges that due to the understaffing issues, the prison guards and staff performed overtime hours during this time period, which, when added to the other allegations does not necessarily support the inference that Brumley was exposed to an excessive risk of harm. Id. Even so, this same argument, that understaffing added to the failure to protect inmates from exposure to drugs, failed in Caraway: "[t]hat kind of conclusory statement, unaccompanied by factual support, receives no presumption of truth." Caraway, 98 F.4th 686, citing Iqbal, 556 U.S. at 678; see Caraway v. CoreCivic of Tennessee, LLC, 2023 WL 2799732, at *11 (W.D. Tenn. Apr. 5, 2023) (complaint failed to state a claim where "Plaintiff merely alleges that [defendant] had a policy and/or custom of chronically understaffing its facilities to save money and this understaffing led to an influx of illegal drugs which ultimately resulted in the death of the Decedent[, but alleged] no facts to connect that understaffing to the drugs that killed Decedent").

Plaintiff argues that this Court is not bound by Zakora, as it was decided by the Sixth Circuit. ECF No. 31 at 12-14. As this Court has shown, Zakora is nevertheless a persuasive case. Plaintiff relies on the holding in Corbin, wherein the district court found that plaintiff had set forth a sufficient cause of action for failure to protect. Corbin v. Bucks Cnty., 703 F. Supp. 3d

527, 536 (E.D. Pa. 2023). The amended complaint in that case stated that "inmates were actively using and distributing narcotics on the block where the decedent was housed," and it describes "a persistent smuggling problem" at the Defendants' facility. In the months after the inmate's death, at least one other BCCF inmate overdosed on fentanyl that was also purchased while incarcerated. Id. The Court notes that Corbin was decided before Trussell, Young, and Caraway, and that arguably, this area of the law has evolved since Corbin. Courts within the Third Circuit have relied on Zakora as recently as last month. See Gottesman v. Penchishen, Civil No. 5:23-cv-03435, 2026 WL 1759396, at *4 (E.D. Pa. June 18, 2026) (granting summary judgment in favor of defendants, finding evidence did not show inmate who died from overdose faced an objectively "substantial risk of serious harm" from deadly drugs at the prison that prison officials were deliberately indifferent to, applying Zakora's three factors and Caraway).

In the end, after careful consideration of the allegations in the Complaint and the applicable case law as to what is required to state a claim under the objective element of a failure to protect claim in violation of the Eighth Amendment, when an incarcerated individual has overdosed on drugs and under the circumstances as alleged, the Court finds that Plaintiff has not plausibly alleged sufficient facts to support a claim that Brumley faced an objectively "substantial risk of serious harm" from deadly drugs at WCP to which prison officials were deliberately indifferent.

**b. Subjective Element**

The subjective prong requires Plaintiff to allege facts plausibly indicating that "the prison officials had 'a sufficiently culpable state of mind'—i.e., 'deliberate indifference' to inmate health or safety" Corbin, 703 F.Supp.3d at 534 (cleaned up) (quoting Farmer, 511 U.S. at 834), which caused the inmate harm, see Young, 2025 WL 354447, at *4.

Here, Plaintiff also has not sufficiently alleged the subjective component of the failure to protect claim, which requires factual averments supporting a reasonable inference that the Westmoreland Defendants: 1) had notice of the risk that inmates would overdose based on their unfettered access to drugs, and 2) failed to reasonably respond to that risk. Zakora, 44 F.4th at 472; Farmer, 511 U.S. at 844.

**1. Notice of the risk**

As explained above, there are no facts to support the claim that the Defendants had notice of the overdose risk prior to Brumley's overdose. Plaintiff does not sufficiently allege that the Defendants knew of a drug problem at WCP in 2023. The Complaint, to be sure, contains numerous allegations that the Defendants "had knowledge" of a prior drug-smuggling problem, involving marijuana laced paper, which was investigated several years before Brumley's death. Here, Plaintiff has made conclusory allegations rather than those with factual and temporal specificity, such as: "[b]efore and during" Brumley's "detention, illicit drugs were available to WCP detainees in myriad ways," Id. ¶ 48; and "in 2022 the possession and distribution of drugs were part of daily life in the WCP," Id. ¶ 49;[7] that "at the time of his admission, the Westmoreland Defendants "had actual and constructive knowledge of the longstanding and ongoing drug epidemic at WCP," Id. ¶ 64; and "[d]efendants were aware or should have been aware of the prevalence of narcotics including fentanyl in prisons nationwide generally and specifically within the WCP." Id. ¶ 67. But the complaint doesn't offer any factual details to support that conclusion—such as how the defendants obtained that knowledge, when they obtained it, or what that knowledge entailed. Caraway, 98 F.4th at 686, citing Zakora, 44 F.4th at 468.

[7] Defendants have noted that this is likely a typographical error and should read 2020, based on the date of the article they have attached to their Brief in Opposition. ECF No. 29-2. Plaintiff does not dispute this.

In Trussell, the district court dismissed the failure to protect claims brought against the correction officer defendants because plaintiff had failed to state a plausible claim that they had subjective knowledge of a drug problem. 2025 WL 914923, at *21-22. She alleged they "knew there was a pervasive drug smuggling problem at the Bucks County Prison", which the court labeled a "bald assertion" "unsupported by "any factual details to support that conclusion—such as how defendants obtained that knowledge, when they obtained it, or what that knowledge entailed." Id. at *22, citing Caraway, 98 F.4th at 687 and Zakora, 44 F.4th at 468. As for plaintiff's allegation that defendants were aware of the prevalence of narcotics including fentanyl in prisons nationwide, so, too, did Caraway's estate "invoke[] incidents from other facilities. … [b]ut those facts have nothing to do with the defendants' knowledge of a drug-smuggling problem at Whiteville." Caraway, 98 F.4th at 686-687, citing Zakora, 44 F.4th at 473.

Here, Plaintiff fails to allege a plausible claim for relief against the individual Defendants to show they had subjective knowledge that fentanyl was being smuggled into the WPC in 2023, or facts, as opposed to conclusory allegations, that Brumley had access to fentanyl such that they were deliberately indifferent to the threat that the drugs posed to Brumley. Therefore, it is respectfully recommended that Plaintiffs' failure to protect claim against the individual correction officers be dismissed without prejudice.

**2. Response to the Risk**

Plaintiff has also not met the requirement of alleging facts to support a reasonable inference that the Westmoreland Defendants failed to reasonably respond to the risk that inmates at WCP would overdose from fentanyl. According to the articles cited by Plaintiff herself, in response to the 2019-2020 incidents involving the smuggling of marijuana-laced papers into WCP, the Westmoreland Defendants took additional steps to detect, prevent entry, and eliminate

drugs from the WCP, including installation of a full body scanner, a change in how mail was handled, instituted seven-hour drug-sniffing dog sweeps of the prison, pat-downs and body scanning. ECF No. 1 ¶¶ 44, 45, 81. Plaintiff has not sufficiently alleged that the Westmoreland Defendants were deliberately indifferent at the time of Brumley's overdose in September 2023.

Accordingly, for all of these reasons, and upon careful consideration of the applicable case law and the facts alleged in the Complaint, it is respectfully recommended that the Motion to Dismiss be granted with respect to Count I.

**2. Counts II and IV: Failure to Perform Proper Safety Checks and Provide Proper Medical Care (Presumptively Against All Defendants)**

The Westmoreland Defendants also move to dismiss Counts II and IV, which allege Eight Amendment violations for failure to perform safety checks and failure to provide proper medical care. In Count II, Plaintiff alleges that the WCP was accredited by National Commission on Correctional Health Care ("NCCHC") and knew of the requirements for policies and procedures to properly assess incoming inmates' medical condition and to perform proper medical screening including obtaining a history of prior street drug use and medically manage an inmate's withdrawal from drugs. Id. ¶ 197. Plaintiff alleges that the Westmoreland Defendants either failed to have policies in place to perform the required medical care for SUD or failed to comply with the requirements of NCCHC. Id. ¶ 198. In Count IV, Plaintiff alleges a failure to provide medical care in that Brumley had a serious medical need, *i.e.* "a history of substance use disorder in his receiving screening records and/or health appraisal examination." Id. ¶ 236. Count IV, in a similar vein to Count II, alleges, failure to render medical care against the John and Jane Doe Correction Officers and failure to perform safety checks.

To establish an Eighth Amendment deliberate indifference claim, a plaintiff must establish: (1) deliberate indifference on the part of the prison official, and (2) a serious medical

need. Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Id. at 347 (internal quotations omitted). See also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991) (holding that serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering"). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, Plaintiff has alleged that Brumley suffered from a history of alleged substance use disorder upon entering WCP. ECF No. 1 ¶ 236. Brumley was suffering from "drug withdrawal, anxiety, and/or exhibiting symptoms of depression." Id. ¶ 73. Plaintiff further claims that despite WCP's records that documented Brumley's serious substance use disorder and other medical conditions, the Corrections Defendants did not adequately monitor him and "someone within the facility was able to distribute illicit drugs to [Brumley], which he ingested." Id. ¶¶ 74, 75.

The Westmoreland Defendants argue that Plaintiff's allegations as to his substance use disorder is nothing more than a threadbare recital of an element of the Eighth Amendment violation and is a mere conclusory statement, subject to dismissal under the Iqbal standard. ECF

No. 29 at 18, citing Iqbal, 556 U.S. at 678. The Westmoreland Defendants argue that to the extent Plaintiff's deliberate indifference claim is based on allegations that the John and Jane Doe Correctional Officers failed to adequately monitor Brumley by improperly conducting safety checks and failing to administer Narcan soon enough to save his life, this is only a negligence claim that is not compensable. ECF No. 29 at 19, citing Monmouth, 834 F.2d at 346 and Kimberly Young v. Monmouth Cnty., Civ. A. No. 24-4975, 2025 WL 354447, at *18 (D.N.J. Jan. 31, 2025). In opposition, Plaintiff argues that the Westmoreland Defendants' reliance on Monmouth is misplaced because his withdrawal symptoms constitutes a serious medical need, which, if unattended, causes suffering and Defendants' failure to provide care for his substance use disorder constitute deliberate indifference under the Eighth Amendment. ECF No. 31 at 17-18.

Defendants are correct that the appropriate standard is that Brumley must have exhibited a serious medical need that was diagnosed or obvious to the Corrections Officers, who had knowledge of that need and were deliberately indifferent to it. Nowhere in Plaintiff's briefing does Plaintiff cite to a case for the proposition that the Corrections Officers were required to watch Brumley continuously. Nor has plaintiff shown by stating plausible facts that these defendants discovered Brumley and ignored the serious medical risk to his health by failing to administer Narcan or calling in the appropriate medical staff; at most, Plaintiff has alleged they negligently failed to timely discover him unconscious. Young 2025 WL 354447, at *5.[8]

---

[8] Any possible claim against the John and Jane Doe Corrections Officers addressed herein is not an express recommendation or finding that the Complaint fails to state a claim; they have not yet been identified and substituted as parties, and once they have been named and served, may assert any defense or motion authorized by applicable Federal Rule of Civil Procedure and law. However, it is addressed because absent a plausible allegation that an agent or employee of the County committed a constitutional violation, the analysis of whether the County can be held liable ends. See Ivy v. Wellpath, 1:21-CV-0061-RAL, 2023 WL 4565328, at * 11 (W.D. Pa. July 17, 2023) (noting that "the requirement of an underlying constitutional violation is implicit in the Third Circuit's Monell framework") (quoting Lansberry v. Altoona Area Sch. Dist., 356 F. Supp. 3d 486, 497 (W.D. Pa. 2018)).

The Westmoreland Defendants argue that Plaintiff has not alleged any personal involvement on the part of Warden Kline and Deputy Warden Pelesky, in monitoring or providing care for Brumley. Plaintiff does not respond to this argument, as noted by the Westmoreland Defendants. ECF No. 32 at 5. In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. See, e.g., Mearin v. Swartz, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation). Absent allegations of personal involvement, Plaintiff has failed to state a claim against Kline and Pelesky. See, e.g., Gould v. Wetzel, 547 Fed. App'x. 129 (3d Cir. 2013) (noting that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right). Plaintiff does not address the argument and, therefore, apparently concedes the point. Cook v. W. Homestead Police Dep't, No. 2:16-CV-01292-CRE, 2017 WL 1550190, at *3 (W.D. Pa. May 1, 2017).

Therefore, it is respectfully recommended that the Motion to Dismiss be granted as to Count II with respect to Defendants Kline and Pelesky.[9]

Accordingly, it is respectfully recommended that the Motion to Dismiss be granted with respect to Counts II and IV.

---

[9] Plaintiff does not specifically list in the subheading for Count II of the Complaint which Defendants are named, unlike the other Counts in the Complaint. To the extent Plaintiff alleges that Westmoreland County should be liable under a theory of respondeat superior, which the County opposes, ECF No. 29 at 19, the Court will address this in the Monell section of Recommendation.

### 3. Count III: Failure to Train, Supervise or Discipline under Monell against Westmoreland County, Kline, and Pelesky

The Westmoreland Defendants move to dismiss Count III, which alleges a Monell claim. To establish liability against a municipality under Section 1983, a plaintiff must demonstrate that the alleged constitutional violation resulted from a policy or custom attributable to that entity. Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). A municipality's § 1983 liability does not arise "solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. "A successful Monell claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom." Hargrove v. City of Phila., 671 F. Supp. 3d 595, 605 (E.D. Pa. 2023). A failure to train or supervise claim under Monell requires that the policymaker make a deliberate or conscious decision not to train or supervise or discipline which "amounts to deliberate indifference to the rights of persons with whom the [subordinates] come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989)); see also Young, 2024 WL 354447, at *3. This consists of establishing whether 1) municipal policymakers know that employees will confront a particular situation, 2) the situation involves a difficult choice or a history of employees mishandling, and 3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. Kelley v. Reyes, No. 19-17911, 2025 WL 618207, at *21 (D.N.J. Feb. 26, 2025). The plaintiff must allege facts showing that the failure to act reflects a deliberate or conscious choice. See Beers v. Cnty. of Northumberland, No. 23-2555, 2024 WL 2874283, at *3 (3d Cir. June 7, 2024) (per curiam); "Additionally, 'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the

deficiency in training [must have] actually caused' the constitutional violation." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (alteration in original) (quoting Canton, 489 U.S. at 391); see also Beers, 2024 WL 2874283, at *3 (same). "Establishing a failure to train claim under Section 1983 is difficult and applies in narrow situations." Cooper v. City of Paterson, No. 23-3566, 2024 WL 1298917, at *5 (D.N.J. Mar. 27, 2024); see also Young, 2025 WL 354447, at *3 (stating that a municipality's culpability is at its most tenuous where a claim rests on a failure to train and will only be tenable where the failure to train amounts to deliberate indifference to the rights of persons in contact with untrained personnel).

Here, Defendants argue that to the extent there is no constitutional violation for failure to protect, or failure to provide medical care in the first instance, there can be no derivative Monell and supervisory claim. ECF No. 29 at 21. Absent such a violation, the analysis of whether the County can be held liable ends. Lansberry v. Altoona Area Sch. Dist., 356 F. Supp. 3d 486, 497 (W.D. Pa. 2018). However, given that the Court is recommending dismissal of those claims without prejudice, the Court will address the remaining requirements of the Monell claim.

Plaintiff argues the following policies or customs at WCP as a basis for liability:

(i) inadequate staffing policies and practices;
(ii) inadequate policies and procedures for intake screening to combat drug smuggling into the WCP;
(iii) inadequate policies and procedures to address the risk of opioid use and overdose;
(iv) inadequate policies and procedures resulting in insufficient monitoring of inmates to discover and prevent drug trade within the housing unit;
(v) inadequate policies and procedures resulting in insufficient monitoring of inmates with a known substance use disorder;
(vi) inadequate policies and procedures resulting in inadequate treatment of inmates with substance use disorder;
(vii) inadequate policies and procedures to prevent drug smuggling;
(viii) inadequate policies and procedures related to safety checks to ensure patient safety; and
(ix) inadequate policies and procedures for corrections officers to recognize and respond to overdoses.

ECF No. 31 at 21. According to Plaintiff these policy failures caused Brumley's death by creating an environment where drugs were available to inmates and prison staff were not properly trained to monitor inmates or respond to overdoses. Had corrections officers been properly trained to perform strip searches, operate the body scanner to detect drugs being smuggled into WCP, or had they been properly overseen by decision makers, Brumley's overdose may not have happened. Plaintiff further argues that the WCP lacked policies to detect drug smuggling activity and to monitor cell block activity, and in the event those policies existed, the training must have been lacking. In a similar vein, Plaintiff argues that safety checks should have been performed such that the correction officers would have been alerted to Brumley's overdose, and if they had, the Narcan would have been administered in a timely fashion so that the fentanyl overdose could be reversed; if such policies were in place at WCP, Plaintiff argues, the Westmoreland Defendants should be liable for failure to train and supervise those employees. ECF No. 31 at 22-23.

To the extent Plaintiff names Warden Kline and Deputy Warden Pelesky, a municipal policymaker or supervisor may be held individually liable for failing to train, supervise, or discipline his or her subordinates. See Rentas v. Kuhn, No. 24-10107, 2025 WL 685975, at *5 (D.N.J. Feb. 28, 2025); Young, 2025 WL 354447, at *3. "[A] plaintiff must show that policymakers were on actual or constructive notice that particular flaws in their training, discipline or supervision caused subordinate officials to violate citizens' constitutional rights, which generally requires knowledge of a prior pattern of similar incidents and circumstances." Best v. Hicks, No. 22-6911, 2024 WL 4891774, at *6 (D.N.J. Nov. 26, 2024)). Likewise, a pattern of similar constitutional violations by untrained employees is ordinarily required to

demonstrate deliberate indifference for purposes of a claim for failure to train against a municipality. See Thomas, 749 F.3d at 223; Young, 2025 WL 354447, at *3

Defendants argue, and the Court agrees, that Plaintiff has failed to state a claim because there has been one incident of a drug overdose death as a result of fentanyl ingestion, which is not a pattern of underlying constitutional violations, and that Plaintiff has admitted in the Complaint that the County had policies and procedures in place to prevent drugs from entering into the WCP and had a history of investigating and prosecuting those who had smuggled drugs. Plaintiff has not alleged facts showing there was an obvious and clear need for the affirmative promulgation of a new policy to address deficiencies which, if left uncorrected, were so likely to cause a violation such as Brumley's overdose, such that the Westmoreland Defendants can be said to have been deliberately indifferent to the deficiency. Young, 2025 WL 354447, at *3 (citing Chavarriaga v. New Jerseky. Dep't of Corr., 806 F.3d 210, 222-23 (3d Cir. 2015). To the extent Plaintiff relies upon other lawsuits brought against Westmoreland County (two of which are excessive force cases) to support or establish a pattern, ECF No. 1 ¶ 97, this does not suffice. See Connick v. Thompson, 563 U.S. 51, 54 (2011); Postie v. Frederick, 2016 WL 4521855, at *5 (M.D. Pa. Aug. 8, 2016), report and recommendation adopted, 2016 WL 4502499 (M.D. Pa. Aug. 29, 2016) (holding that complaint failed to support a pattern of constitutional violations despite attaching four lawsuits in which the defendant township was sued for various alleged Fourth Amendment violations committed by the defendant police officer and other township police officers).

To maintain a claim for failure to train, a plaintiff must show that "a responsible municipal policymaker had contemporaneous knowledge of the offending occurrence or knowledge of a pattern of prior incidents of similar violations of constitutional rights and failed

to take adequate measures to ensure the particular right in question or otherwise communicated a message of approval to the offending subordinates." Garcia v. Cnty. of Bucks, Pa, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001) (citations omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for . . . failure to train." Simpson v. Ferry, 2016 WL 4247546, at *7 (E.D. Pa. Aug. 10, 2016) (internal quotation marks and further quotations omitted). Alternatively, "a need for training or other corrective action to avoid imminent deprivations of a constitutional right must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Garcia, 155 F. Supp. 2d at 268. A failure to train claim also requires a plaintiff to identify specific training not provided that could reasonably be expected to prevent the injury that occurred. Joines v. Twp. of Ridley, 229 Fed. App'x. 161, 163 (3d Cir. 2007). Plaintiff has not alleged facts to support any of the requirements necessary to support a failure to train claim, because she has alleged only an isolated incident and does not allege any facts to show a pattern of similar constitutional violations by untrained employees. It is not enough to allege in conclusory fashion that had the Westmoreland Defendants adequately trained and/or supervised the individual defendants, Brumley would have received appropriate care. They are mere conclusions and unsupported by facts. See Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" . . . without more, are not sufficient to state a claim under Monell).

Accordingly, it is respectfully recommended that Count III be dismissed for failure to state a Monell claim.

### 4. PSTCA and the Wrongful Death or Survival Claims

While not brought as a separate Count in the Complaint, Defendants move to dismiss, or bar, Plaintiff's reliance on the Pennsylvania Wrongful Death and Survival Act, 42 Pa. C.S.A § 8301 and the Pennsylvania Survival Statute, 42 Pa. C.S.A. § 8302, on the grounds that they are barred by the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A § 8541 et seq. ECF No. 29 at 24-25. In her Brief in Response, Plaintiff argues that the Complaint asserts claims under the two statutes only as necessary to provide the procedural "vehicle through which plaintiffs can recover for unlawful conduct that results in death," citing Johnson v. City of Phila., 105 F.Supp.3d 474, 483 (E.D. Pa. 2015). ECF No. 31 at 23.

Accordingly, it is recommended that, that because Plaintiff is not asserting this as a wrongful death or survival action, the motion be denied without prejudice to the Defendants to assert the argument if the underlying constitutional tort claims do not survive. Curran v. Venango County, 1:23-CV-00019-SPB, 2023 WL 8439274, *11-12 (W.D. Pa. November 2, 2023), report and recommendation adopted, 2023 WL 8061513 (W.D. Pa. November 21, 2013).

### 5. Punitive Damages Against Municipality or Individuals Sued in Individual Capacities

Defendants request that to the extent Plaintiff seeks punitive damages against the County, and against Kline and Pelesky in their official capacities, the claims be dismissed. ECF No. 29 at 25. In Plaintiff's Response, Plaintiff acknowledges that punitive damages are unavailable against Westmoreland County, as a municipality under Section 1983. ECF No. 31 at 23. Therefore, it is respectfully recommended that any claim for punitive damages against Westmoreland County be dismissed. See Doe v. County of Centre, PA, 242 F.3d 437, 455 (3d Cir. 2001)

As for the individual defendants, Plaintiff argues punitive damages are available against Kline and Pelesky in their individual capacities if the fact finder determines that their conduct involved "reckless or callous indifference to the federally protected rights of others." ECF No. 31 at 23, citing Smith v. Wade, 461 U.S. 30, 56 (1983). In Smith, the United States Supreme Court held that in order for a jury to impose punitive damages against individual defendants in a Section 1983 case, the alleged conduct must demonstrate reckless or callous disregard of, or indifference to, the rights or safety of others. Id. at 56. Punitive damages may also be awarded if the individual defendant's conduct is shown to be a result of evil motive or intent, but need not necessarily meet this higher standard. Id. at 46–47.

Plaintiff argues in her Brief in Opposition that she has sufficiently alleged that the individual defendants acted with wanton and willful disregard for Brumley's safety by knowingly ignoring the drug crisis, failing to implement obvious safety measures, and failing to ensure a proper emergency medical response. ECF No. 31 at 23. Plaintiff does not cite specifically to which portion or paragraph of the Complaint sets forth this wording, but it can be found at ECF No. 1 at ¶ 118: "At all times relevant the individual Corrections Defendants acted in wanton and willful disregard of the foreseeable harm [Brumley] faced while detained in the WCP and Plaintiff is therefore entitled to punitive damages." As alleged, and in the absence of more specificity, such conduct does not equate to reckless or callous disregard of, or indifference to Brumley's rights by Warden Kline and Deputy Warden Pelesky.

It is respectfully recommended that Defendant's Motion to Dismiss with respect to Plaintiff's claim for punitive damages against the individual defendants in their individual capacities be granted.

### 6. Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). Here, Plaintiff may be able to cure the deficiencies identified in this Report, except to the extent Plaintiff seeks punitive damages against Westmoreland County as a municipality under Section 1983. Accordingly, it is recommended that all other claims recommended for dismissal herein, Counts I, II, III, and IV, be dismissed without prejudice and that Plaintiff be granted leave to correct, if she can, the pleading deficiencies identified herein. It is further recommended that Plaintiff be granted leave to file an Amended Complaint within a reasonable time.

## D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss, ECF No. 12, be granted as set forth herein.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193

n.7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

Maureen P. Kelly

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: July 30, 2026

cc: The Honorable W. Scott Hardy
United States District Judge

All counsel of record by Notice of Electronic Filing